IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KAMITIA HILL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.  3:19-CV-1389-L-BH |
| | § | |
| ANDREW SAUL, | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings, evidence, and applicable law, the Commissioner's decision should be **REVERSED**, and the case should be **REMANDED** for further proceedings.

**I.  BACKGROUND**

Kamitia Hill (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner) denying her claim for supplemental security income (SSI) under Title XVI of the Act. (doc. 1 at 2.)[2]

**A.    Procedural History**

On February 28, 2015, Plaintiff applied for SSI, alleging disability beginning on March 1, 2004.  (doc. 13-1 at 172.) Her SSI claim was denied on November 18, 2016, and upon reconsideration on March 16, 2017. (*Id*. at 61-62.)  On May 3, 2017, she requested a hearing before an Administrative Law Judge (ALJ).  (*Id*. at 91.)  She appeared and testified at a hearing on March 19, 2018. (*Id*. at 32-50.)  On August 3, 2018, the ALJ issued a decision finding Plaintiff was not

---

[1] By *Special Order No. 3-251*, this social security appeal was automatically referred for full case management.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

under a disability from September 12, 2016, and denying her claim for SSI benefits. (*Id*. at 26-27.)

Plaintiff appealed the ALJ's decision to the Appeals Council on August 13, 2018. (*Id*. at 167.)  The Appeals Council denied her request for review on April 27, 2019. (*Id*. at 5.)  She timely appealed the Commissioner's decision under 42 U.S.C. § 405(g).  (*See* doc. 1.)

**B.**   **Factual History**

    **1.**   **Age, Education, and Work Experience**

Plaintiff was born on January 18, 1968, had an eleventh grade education, and was 50 years old at the time of the hearing.  (*Id*. at 38-40.)  She had no relevant past work experience. (*Id*. at 47.)

    **2.**   **Medical Evidence**

On September 16, 2016, Plaintiff presented to Metrocare Services (Metrocare) for a psychiatric assessment with Dr. Zareena Raffi (Dr. Raffi). (*Id*. at 355.) She reported that her mood was "all over the place," and she was experiencing paranoid delusions. (*Id*.)  She was adequately groomed; her behavior was cooperative; she was alert and "oriented X 4;" and she had fair insight, judgment, and impulse control. (*Id*. at 356.)  Her assessment plan was to resume previous "tx regime," labs in two weeks, and a follow up in four weeks. (*See id*.)

On October 17, 2016, Plaintiff saw Dr. Raffi for her mood swings. (*Id*. at 373.)  She reportedly had "been off the chain, [and] need[ed] to get back on [her] medicines." (*Id*.) She was irritable, had mood swings, psychosis, and auditory hallucinations. (*Id*. at 374-75.) Plaintiff was adequately groomed, her behavior was cooperative, she was alert and oriented, her articulation was coherent, and her thought process was logical and organized, but her judgment, insight and impulse control were poor. (*Id*. at 375-76.)  She was assessed with "[d]epressed mood, + AH," and was to restart her medications. (*Id*. at 377.)

On November 17, 2016, Janie Ritch, Ph.D., a state agency psychology consultant (SAPC), completed a medical evaluation for Plaintiff based on the medical evidence of record. (*See id.* at 54-56.) She opined that alleged mental impairments of "Schizophrenia and Other Psychotic Disorder" were non-severe and did not cause any restrictions of activities of daily living, difficulties in maintaining social functioning, or in maintaining concentration, persistence or pace and no repeated episodes of decompensation. (*Id.* at 54-55.)

On December 12, 2016, Plaintiff saw Dr. Raffi for a follow up visit. (*Id.* 367.) Plaintiff complained that she had "been lashing out," was irritable, had mood swings since being off her medication, and had auditory hallucinations. (*Id.* at 368-69.) She also reported stressors related to her disability income not being reinstated. (*Id.* at 371.) Plaintiff was adequately groomed, her behavior was cooperative, her articulation was normal, and her thoughts were logical and organized. (*Id.* at 369.) She had poor judgment, insight and impulse control, but she was otherwise alert and oriented. (*Id.*) She was diagnosed with major depressive disorder and prescribed Risperdal, her prescription for Elavil was decreased to 25 mg, and she was instructed to continue taking Cogentin and return for a follow up in four weeks. (*Id.* at 371, 380.)

On February 14, 2017, Diane Kogut, Ph.D., a SAPC, completed a medical evaluation for Plaintiff based on the medical evidence of record. (*See id.* at 69-72.) She opined that Plaintiff's alleged mental impairments of "Schizophrenia and Other Psychotic Disorder" were non-severe. (*Id.* at 69.) She also opined that Plaintiff had mild limitations in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. (*Id.* at 69-70.)

On March 4, 2017, Plaintiff presented to Harar Yusfu, M.D. (Dr. Yusuf) at Yimaj Medical

3

Services, PLLC for a consultative examination. (*Id*. at 386.) Her chief complaints were bipolar disorder, schizophrenia, and subchondral scierosis. (*Id*.) She was accompanied by her uncle, who provided much of her relevant medical history. (*Id.*) Plaintiff reported that she was independent on personal care but needed assistance for home activities and traveling. (*Id*. at 387.) There was a markedly decreased range of motion in the left shoulder, elbow, and wrist. (*Id*. at 388.) Plaintiff was a poor historian, and she cried and laughed while providing limited history. (*Id*. at 387.) She appeared depressed but was alert and oriented. (*Id*.) She was diagnosed with bipolar disorder/schizophrenia with unstable emotion, severe degenerative joint disease with subchondral sclerosis of the left shoulder with limited range of motion, hypertension, and hyperlipidemia, based on the interview, examination, and medical records. (*Id*.)

On December 27, 2017, Plaintiff presented to Metrocare as a walk-in after missing her appointment. (*Id*. at 455.) She was "doing okay," and her mood was stable. (*Id*.) Plaintiff was noted to be adequately groomed, her behavior was cooperative, and her thought process was logical and organized, but she had poor judgement, insight and impulse control. (*Id*. at 457.) Plaintiff was given a refill on her medications for Cogentin, Remeron, Risperdal, and instructed to follow up within eight weeks. (*Id*. at 459.)

On February 1, 2018, Plaintiff presented to Parkland Health & Hospital (Parkland) as a new patient for hypertension and a medication refill. (*Id*. at 475.) She was oriented to person and place, had a normal mood and affect, and her behavior and judgment were normal. (*Id* at 476.) She was to continue to follow up with Metrocare, follow up with "PCP in 3-4 months or as needed," and take medications as recommended. (*Id*. at 477.)

On March 29, 2018, Plaintiff saw Dr. S. Dean Aslinia, Ph.D. (Dr. Aslinia), for a clinical

interview and mental status examination. (*Id*. at 478.) She missed her first appointment with Dr. Aslinia because she overslept. (*Id*.) She was taken to her second appointment by her daughter but was 15 minutes late. (*Id*.) Plaintiff reported having low energy and appetite, sleep disturbances, persistent anxiety, difficulty concentrating, emotional withdrawal, persistent fear of disability, pressure of speech, and memory impairment. (*Id*. at 479.) She had been hospitalized in Green Oaks and Parkland for mental health reasons, including bipolar disorder and depression. (*Id*.) She slept an average of 12 hours a day, was unable to drive or cook, and reported hearing voices. (*Id*.) Plaintiff was noted as being cooperative, deemed a reliable informant, and was extremely anxious and impatient during her assessment. (*Id*.) She appeared well-groomed, her behavior was "excitable and bossy," her conversations were relevant and coherent, and her thought processes were disorganized. (*Id*.) She was fairly oriented to time, place, person, and situation; she was anxious and at times paranoid; and her general knowledge and information was poor. (*Id*.) Her recent memory, judgment, logical reasoning, and insight were poor. (*Id*.) Plaintiff's prognosis was poor. (*Id*.)

Plaintiff completed the Millon Clinical Multiaxial Inventory-IV (MCMI-IV), Beck Anxiety Inventory (BAI), and Beck Depression Inventory-II (BDI-II) tests during her examination. (*Id*. at 480.) Her BAI score placed her in the 99.8 percentile and in the severe diagnostic range. (*Id*. at 483.) Dr. Aslinia noted that Plaintiff expressed a high level of "symptomatology associated with anxiety. Her anxiety may significantly interfere with information-processing functions and result in poorly planned responses to environmental pressures. The inability to meet life's demands adequately may then exacerbate [Plaintiff's] real-world problems and lead to greater anxiety and even greater difficultly in responding to environmental pressures." (*Id*. at 484.) Plaintiff's BDI-II score placed her in the 99.9 percentile and in the severe diagnostic range. (*Id*. at 488.) This level of depression

5

was noted as being a "cause for concern, and suicide risk should not be overlooked." (*Id*. at 489.) Plaintiff's MCMI-IV interpretive report was considered invalid due to her active psychosis, which caused a high likelihood of random responding. (*Id*. at 480.) She was diagnosed with severe major depressive disorder, generalized anxiety disorder, schizophrenia, and severe bipolar I disorder. (*See id*.) The diagnosis was consistent with the objective exam. (*Id*.)

### 3. Hearing Testimony

On March 19, 2019, Plaintiff and a vocational expert (VE) testified at a hearing before the ALJ. (*Id*. at 34-75.) Plaintiff was represented by an attorney. (*Id*. at 34.)

#### a. *Plaintiff's Testimony*

Plaintiff testified that she lived with her daughter and granddaughter. (*Id*. at 40.) She did not have a driver's license and was taken to the hearing by one of her daughters. (*See id.* at 39-40.) She completed the eleventh grade but could not remember if she had any further education after high school. (*Id*. at 40.) She did not have any income for many years, except from Better Options Home Care Services in 2017, but she could not remember if she worked there. (*Id*. at 41.)

Plaintiff testified that she could not work because she didn't really like being around a lot of people; she felt like they were going to "do something to [her]," and she could not stand for too long because she had dizzy spells. (*See id*. at 41.) At home, she slept and watched television, and could not stay focused on what she was watching. (*Id*. at 42-43.) She spent approximately five days a week entirely in bed. (*See id*. at 42.) She got into arguments with her daughter and heard voices everyday. (*See id.* at 43.) She didn't leave the house by herself, did not go grocery shopping, or cook meals for herself. (*Id*. at 44.) She did not usually get up in the morning or get ready herself, and only sometimes remembered to take her medication. (*Id*. at 43.) She had crying spells everyday for no

reason, had anxiety and felt panicked, and experienced dizzy spells that were caused by her medication. (*Id*. at 44-45.) She had difficulty walking because of the dizzy spells and could only walk for about five minutes. (*Id*. at 45.) Plaintiff had limitations with her left shoulder that prevented her from moving her arm to the right, and she could only raise it to chest level. (*Id*. at 45.)

        **b.**      ***VE's Testimony***

There was no past work experience that needed to be classified. (*Id*. at 47.) The ALJ asked the VE to opine whether there was any work that could be performed by a hypothetical individual of the same age, education as Plaintiff, who could lift, carry, push, and pull 20 pounds occasionally, and 10 pounds frequently, sit, stand and walk six hours in an eight hour day with normal breaks, but was limited to occasional left overhead reaching, could understand, remember and carry out simple instructions, make simple work related decisions, maintain attention and concentration for two hour segments, interact with others and respond appropriately to changes in routine work settings. The VE testified that the hypothetical individual could perform the following jobs: housekeeping cleaner, Dictionary of Occupational Titles (DOT) 323.687-014, (light, SVP 2), with 136,080 jobs in the national economy; ticket taker DOT 344.667-010 (light, SVP 2), with 17,220 jobs in the national economy; and a routing clerk DOT 222.687-022 (light, SVP 2), with 40,520 jobs in the national economy. (*Id*. at 48.)

The VE considered a second hypothetical individual with the same limitations set out in hypothetical number one with the following difference: the hypothetical individual would be limited to occasional supervisory and co-worker contact, and no public contact. (*Id*.) The VE testified that the hypothetical individual could perform work as a housekeeping cleaner and routing clerk, but would also be able to work as a mail clerk, DOT 209.687-026 (light, SVP 2) with 22,470 jobs in the

7

national economy. (*Id.*)

The VE considered a third hypothetical individual of the same age, and education as Plaintiff, but due to severe pain and mental impairments, could not sustain concentration, persistence or pace to do even simple, routine tasks on a regular and continuing basis for eight hours a day, five days a week, for a 40 hour work week, or an equivalent work schedule. (*Id.* at 48-49.) The VE opined that this hypothetical individual could not perform any work. (*Id.* at 49.) The VE's testimony was consistent with the DOT. (*Id.* at 49.)

C.  **ALJ's Findings**

The ALJ issued her decision denying benefits on August 3, 2018. (*Id.* at 17-27.) At step one, she found that Plaintiff had not engaged in substantial gainful activity during since September 12, 2016, the alleged onset date (*Id.* at 19.) At step two, she found the following severe impairments: left shoulder degenerative joint disease with subchondral sclerosis, major depressive disorder with psychosis, generalized anxiety disorder, unspecified schizophrenia, and bipolar I disorder. (*Id.* at 20.) Despite those impairments, at step three, the ALJ found that Plaintiff had no impairment or combination of impairments that met or equaled the severity of one of the impairments listed in the social security regulations. (*Id.*) She next determined that Plaintiff retained the RFC to perform light work, but was only able to understand, carry out, but was limited to occasional left overheard reaching. (*Id.* at 21.) She could understand, remember, and carry out simple instructions, make simple work-related decisions, maintain attention and concentration for two-hour segments, and respond appropriately to changes in routine work settings, with no more than occasional interaction with co-workers and supervisors, and no contact with the general public. (*Id.* at 21.)

At step four, the ALJ determined that Plaintiff did not have any past relevant work. (*Id*. at 25.) At step five, she found that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed. (*Id*. at 26.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined by the Social Security Act, since September 12, 2016. (*Id*. at 26.)

## II.  STANDARD OF REVIEW

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are also identical to those governing the

9

determination under a claim for supplemental security income. *See id.* Courts may therefore rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id.*

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. at § 404.1520(b)-(f)).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability.

10

*Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### III. ISSUES FOR REVIEW

Plaintiff presents three issues for review:

1. Did the Commissioner render a decision unsupported by substantial evidence in formulating Plaintiff's RFC where the ALJ didn't rely on any treating or non-treating physician's opinion in assessing Plaintiff's mental limitations?

2. Did the Commissioner legally err or render a decision unsupported by substantial evidence where the ALJ failed to mention or analyze results of objective mental health testing at odds with the mental limitations assessed in Plaintiff's RFC?

3. Did the Commissioner legally err in failing to make findings that Plaintiff can obtain and maintain employment in contravention of Fifth Circuit precedent where Plaintiff's mental health conditions include bipolar disorder?

(doc. 16 at 5.)

### IV. RFC ASSESSMENT[3]

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence. (*See*

---

[3]Because Plaintiff's first two issues implicate the ALJ's RFC assessment, they are considered together.

11

doc. 16 at 11.)

Residual functional capacity, or RFC, is defined as the most that a person can still do despite recognized limitations. 20 C.F.R. at § 404.1545(a)(1). The RFC determination is a combined "medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollis v. Bowen*, 837 F.2d 1378, 1386–87 (5th Cir. 1988) (per curiam). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). An individual's RFC should be based on all of the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources. 20 C.F.R. at § 404.1545(a)(3) (2012); SSR 96-8p, 1996 WL 374184, at *1.

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ may find that a claimant has no limitation or restriction as to a functional capacity when there is no allegation of a physical or mental limitation or restriction regarding that capacity, and no information in the record indicates that such a limitation or restriction exists. *See* SSR 96-8p, 1996 WL 374184, at *1. The ALJ's RFC decision can be supported by substantial evidence even if she does not specifically discuss all the evidence that supports her decision or all the evidence that she rejected. *Falco v. Shalala*, 27 F.3d 160, 163–64 (5th Cir. 1994). A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Leggett*, 67 F.3d at 564.

Nevertheless, the substantial evidence review is not an uncritical "rubber stamp" and requires

"more than a search for evidence supporting the [Commissioner's] findings." *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984) (citations omitted). The Court "must scrutinize the record and take into account whatever fairly detracts from the substantiality of the evidence supporting the" ALJ's decision. *Id*. Courts may not reweigh the evidence or substitute their judgment for that of the Secretary, however, and a "no substantial evidence" finding is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *See Johnson*, 864 F.2d at 343 (citations omitted).

### A. Lay Opinion

Plaintiff argues that the ALJ's RFC opinion "runs afoul" of binding Fifth Circuit precedent because it is not supported by medical opinion evidence, but on the ALJ's lay interpretation of raw medical data in violation of *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995). (*See* doc. 16 at 9-10.) The Commissioner responds that determinations based on the raw medical data "are squarely within the ALJ's responsibilities as the administrative finder of fact." (doc. 18 at 3-4.)

In *Ripley*, the claimant argued that the ALJ failed to develop the record fully and fairly by finding that he could perform sedentary work even though there was no medical testimony to support that conclusion. *Ripley*, 67 F.3d at 552. The Fifth Circuit noted that although an ALJ should usually request a medical source statement describing the types of work that the applicant was still capable of performing, the absence of such a statement did not necessarily make the record incomplete. *Id*. Rather, the court had to consider whether there was substantial evidence in the record to support the ALJ's decision. *Id*. The record contained "a vast amount of medical evidence" establishing that the claimant had a back problem, but it did not clearly establish the effect of that problem on his ability to work, so the ALJ's RFC determination was not supported by substantial

13

evidence. *Id*. The Fifth Circuit remanded the case with instructions to the ALJ to obtain a report from a treating physician. *Id*. at 557–58. Notably, it rejected the Commissioner's argument that the medical evidence discussing the extent of the claimant's impairment substantially supported the ALJ's RFC assessment, finding that it was unable to determine the effects of the claimant's condition on his ability to work absent reports from qualified medical experts. *Id*. at 558 n.27; *see also Browning v. Barnhart*, No. 1:01-CV-637, 2003 WL 1831112, at *7 (E.D. Tex. Feb. 27, 2003).

Here, the ALJ referenced Dr. Aslinia's March 29, 2018 clinical interview and mental status examination. (doc. 13-1 at 23.) She noted Dr. Aslinia's findings that Plaintiff "was fairly oriented to time, place person, and situation" and "had a poor fund of general knowledge and information, as well as a poor range of intellectual functioning." (*Id*.) She also noted that Plaintiff's "recent memory, logical reasoning, and insight were poor, although her remote memory was intact." (*Id*.) She did not discuss the MCMI-IV, BAI, or the BDI-II objective tests that were a part of Dr. Aslinia's diagnostic impressions, however. The interpretation report for the BAI and BDI-II objective tests showed that Plaintiff was in the 99.8 percentile for anxiety and the 99.9 percentile for depression. (*Id*. at 483, 488.) Dr. Aslinia's interpretation report noted that Plaintiff's level of "depression is cause for concern, and suicide risk should not be overlooked." (*Id*. at 489.) He also noted that her "anxiety may significantly interfere with information-processing functions and result in poorly planned responses to environmental pressures. The inability to meet life's demands adequately may then exacerbate [Plaintiff's] real-world problems and lead to greater anxiety and even greater difficulty in responding to environmental pressures." (*Id*. at 484.)

While it is within the ALJ's discretion whether to accept the results of the objective medical tests, the ALJ has a duty to review all relevant evidence in the record. Here, it does not appear that

the ALJ considered the objective tests performed by Dr. Aslinia because she failed to explain that she considered them but nevertheless chose to reject them. Failure to consider the test results is error. *See Rayson v. Berryhill*, No. 3:16-CV-334-G-BN, 2017 WL 1088335, at *4 (N.D. Tex. Mar. 3, 2017), *report and recommendation adopted*, No. 3:16-CV-0334-G (BN), 2017 WL 1078617 (N.D. Tex. Mar. 22, 2017) (finding the ALJ's failure to consider the MCMI-III test results was an error of law because the results were part of the record and the ALJ had a duty to review them); *compare Moore v. Astrue*, No. 3:11-CV-2961-BK, 2012 WL 1719183, at *5 (N.D. Tex. May 16, 2012) (finding that the ALJ did not impermissibly substitute his lay opinion for a treating physician's opinion because the evidence indicated that the ALJ considered the MCMI, and the decision whether to accept the results of the MCMI was within his discretion).

The ALJ also referenced Plaintiff's medical records from her visit with Dr. Raffi at Metrocare, which noted that she demonstrated normal speech, logical thought content, and organized thought processes. (*Id.* at 367-71, 455-59.) Dr. Raffi did not offer an opinion on the effects of Plaintiff's impairments on her ability to work; he only narrowly opined that she had problems with her primary support group and problems related to her social environment. (*Id.* at 367.) He also noted that Plaintiff had poor judgment, insight and impulse control. (*Id.* at 369, 375.) "[E]vidence which merely describes Plaintiff's medical conditions is insufficient to support the ALJ's RFC determination." *See Turner v. Colvin*, No. 3:13-CV-1458-B, 2014 WL 4555657, at *5 (N.D. Tex. Sept. 12, 2014) (citing *Ripley*, 67 F.3d at 557); s*ee also Browning*, 2003 WL 1831112, at *7 (finding despite the fact that there was a vast amount of treating sources' medical evidence in the record establishing that plaintiff suffered from certain impairments, including voluminous progress reports, clinical notes, and lab reports, "none [made] any explicit or implied reference to effects these

15

conditions h[ad] on claimant's ability to work" and the ALJ could not rely on that "raw medical evidence as substantial support for" the claimant's RFC).

Additionally, the ALJ considered and gave little weight to the SAPCs' opinions that Plaintiff's mental limitations were non-severe because she found they were not consistent with the record as a whole. (*See* doc. 13-1 at 24.) She noted that the record generally supports a finding that Plaintiff's limitations resulting from her alleged mental impairments are severe. (*Id.* at 25.) Although the ALJ gave little weight to their opinions, she did not identify an acceptable medical source that supported her RFC determination. (*Id.* at 24.)

The ALJ did not explain how she determined that Plaintiff was able to understand, remember, carry out simple instructions, make simple work-related decisions, maintain attention and concentration for two-hour segments, and respond appropriately to changes in routine work settings with no more than occasional interaction with co-workers and supervisors, and no contact with the general public. (*Id.* at 21.) While the ALJ may choose to reject the objective testing by Dr. Aslina and the opinions of the SAPCs, "[s]he cannot independently decide the effects of Plaintiff's ... impairments on [her] ability to work, as that is expressly prohibited by *Ripley*." *Shugart v. Astrue*, No. 3:12–CV–1705–BK, 2013 WL 991252, at *5 (N.D. Tex. Mar. 13, 2013). There are no medical opinions in the record regarding the effects Plaintiff's mental impairments had on her ability to work, particularly in the areas of understanding, remembering, carrying out instructions, and interacting with others, so the ALJ appears to have relied on her own interpretation of the medical and other evidence, which she may not do. *See Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) ("[a]n ALJ may not–without the opinions from medical experts–derive the applicant's [RFC] based solely on the evidence of his or her claimed medical conditions, [and] an ALJ may not

16

rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions."); *Tyler v. Colvin*, No. 3:15-CV-3917-D, 2016 WL 7386207 (N.D. Tex. Dec. 20, 2016) (finding that an ALJ impermissibly relied on his own medical opinion to develop his RFC determination); *Davis v. Astrue*, No. 1:11 CV-00267-SA-JMV, 2012 WL 6757440 (N.D. Miss. Nov.6, 2012) ("In formulating a claimant's RFC, the ALJ-a layperson-may not substitute his own judgment for that of a physician."), *adopted by* 2013 WL 28068 (N.D. Miss. Jan. 2, 2013). Consequently, substantial evidence does not support the mental aspect of the ALJ's RFC determination. *See Medendorp v. Colvin*, No. 4:12-CV-687-Y, 2014 WL 308095, at *6 (N.D. Tex. Jan. 28, 2014) (finding because the ALJ rejected the only medical opinion in the record that he had analyzed that explained the effects of the claimant's impairments on her ability to perform work, there was no medical evidence supporting the ALJ's RFC determination)

**B.      Harmless Error**

Because "[p]rocedural perfection in administrative proceedings is not required" and a court "will not vacate a judgment unless the substantial rights of a party have been affected," Plaintiff must show she was prejudiced by the ALJ's failure to rely on medical opinion evidence in assessing her RFC. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam). She must show that the ALJ's failure to rely on a medical opinion as to the effects her impairments had on her ability to work casts doubt onto the existence of substantial evidence supporting her disability determination. *See McNair v. Comm'r of Soc. Sec. Admin.*, 537 F. Supp. 2d 823, 837 (N.D. Tex. 2008) ("Procedural errors in the disability determination process are considered prejudicial when they cast doubt onto the existence of substantial evidence in support of the ALJ's decision.") (citing *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)).

17

Here, the ALJ's failure to rely on a medical opinion in determining Plaintiff's RFC casts doubt as to whether substantial evidence exists to support the finding that she is not disabled. *See Williams*, 355 F. App'x at 832 (finding that the decision denying the claimant's claim was not supported by substantial evidence where the ALJ rejected the treating physicians' opinions and relied on his own medical opinions as to the limitations presented by the claimant's back problems in determining the RFC); *see also Laws v. Colvin*, No. 3:14-CV-3683-B, 2016 WL 1170826 (N.D. Tex. Mar. 25, 2016) (reversing and remanding for further proceedings for lack of substantial evidence based on the ALJ's failure to rely on a medical opinion in determining the plaintiff's RFC). Given the evidence supporting Plaintiff's complaints about the severity of her depression and anxiety, the ALJ could have reached a different disability determination had she considered the objective medical testing regarding the effects that this condition had on Plaintiff's ability to respond to environmental pressures and her information-processing, and incorporated relevant limitations into her RFC. *See Herd v. Comm'r of the Soc. Sec. Admin.*, No. 3:11-CV-2847-N, 2012 WL 4512494, at *10 (N.D. Tex. Aug. 27, 2012), *report and recommendation adopted sub nom. Herd v. Comm'r of Soc. Sec. Admin.*, No. 3:11-CV-2847-N, 2012 WL 4512530 (N.D. Tex. Sept. 28, 2012) (finding that it was error for the ALJ to leave out the doctor's conclusion based on MCMI I–III testing that the plaintiff was incapable of even low stress jobs, and would likely be absent from work due to her impairments or treatment more than three times a month, and to focus only on an observation made during testing that there may have been an exaggeration of the current emotional problems); *see also Menard v. Astrue*, No. CIV.A. 08-0586, 2009 WL 4823853, at *7 (W.D. La. Dec. 14, 2009) (finding that the ALJ's failure to consider the treating physicians psychological report, including the BDI test, was not harmless error because the ALJ would have reached a

18

different result had the RFC properly incorporated the treating physicians' opinions).

Plaintiff has shown that when assessing her RFC, the ALJ erred in failing to consult medical opinion evidence, including the objective test results, regarding the effects of her depression and anxiety, along with her other impairments. She has also shown prejudice resulting from that error. Remand is required on this basis.[4]

## V. RECOMMENDATION

The Commissioner's decision should be **REVERSED**, and the case should be **REMANDED** for further proceedings.

**SO RECOMMENDED**, on this 29th day of September, 2020.

*Irma Carrillo Ramirez*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[4] Because the ALJ's determination of Plaintiff's RFC on remand will likely affect the remaining issue, it is not addressed.

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. at Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE